UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ENTERPRISE PLAN B, INC., et al.,<br><br>Defendants. | Case No. 24-cv-03329-PCP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 73, 78 |

Plaintiff Evanston Insurance Company filed this insurance-coverage action seeking a declaration that it owed no duty to defend or indemnify defendants Enterprise Plan B, Inc., Lance Brown, and Diane Stember Richards in connection with an underlying lawsuit filed against Enterprise, Brown, and Richards by defendants Alex and Eugenia Serrano Borja. The Borjas counterclaimed, seeking a declaration that Evanston had a duty to both defend and indemnify.

Now before the Court are cross-motions for summary judgment by the Borjas and Evanston. For the following reasons, the Court denies Evanston's motion, denies the Borjas's motion for summary judgment as to Evanston's duty to indemnify, and grants the Borjas's motion as to Evanston's duty to defend.

## BACKGROUND

Enterprise is a home-building and home-renovation company owned by Brown and Richards. In 2017, Brown applied for and received a permit to renovate a residential property at 1437 Weaver Drive in San José, California. When applying for the permit, Brown expressly acknowledged that he would exclusively contract with licensed contractors to work on the renovation project, and that for purposes of state and federal law he would be considered an "employer" of any unlicensed contractors. Brown hired a licensed general contractor to perform most of the renovation work at the property. Because the general contractor did not agree to

complete any plumbing work, however, Brown hired James Brown to perform the work. He did so despite knowing that James was not a licensed plumber.

In connection with Enterprise's renovation of the property, Evanston issued a commercial general-liability policy to Brown, Richards, and Enterprise (together, the "Named Insureds"). The policy provided that Evanston would indemnify the Named Insureds for, and defend the Named Insureds against, any suit seeking "damages because of 'bodily injury' … caused by an 'occurrence'"—i.e., an "accident"—that "takes place in the 'coverage territory,'" which was defined to include "[t]he United States of America." Coverage under the policy was limited to $1 million per occurrence. The policy contained several exceptions to the general coverage mandate, two of which are relevant here. First, an auto exclusion withdrew coverage for liability arising from the "use" of any "auto" that is "owned or operated by … any insured," including the Named Insureds' "employees." Second, the "Designated Premises or Project" limitation narrowed coverage to "bodily injury" arising out of either a specified project or specified premises.

In July 2017, while driving to 1437 Weaver Drive after purchasing supplies for his plumbing work, James ran a red light and hit Alex Borja's vehicle in a car crash, causing him severe traumatic brain injuries. As a result of the accident, Borja underwent multiple surgeries on his skull, and he now suffers from traumatic epilepsy, headaches, impaired cognition and memory, depression, anxiety, and extreme personality changes. He is no longer able to care for his children and will never return to work.

In May 2018, the Borjas filed the underlying action against James and the Named Insureds seeking damages for injuries caused by the accident. Brown tendered the complaint to Evanston, but Evanston denied coverage and refused to defend, citing both the policy's auto exclusion and its Designated Premises or Project limitation. The Named Insureds later agreed to assign their rights against Evanston to the Borjas, and the parties in the underlying action stipulated to have a referee resolve the action pursuant to California Code of Civil Procedure § 638(a). As relevant here, the referee found that, as an unlicensed plumber, James was a statutory employee of the Named Insureds under California Labor Code § 2750.5, and that the Named Insureds were therefore vicariously liable for his negligent driving. The trial court adopted the referee's decision

2

1    and entered a judgment for the Borjas totaling nearly $78 million.

2        Evanston then filed this action, seeking a declaration that the policy does not provide

3    coverage in connection with the accident, such that Evanston has no duty to indemnify the Named

4    Insureds for the judgment against them. The Borjas counterclaimed, requesting a declaration that

5    Evanston had a duty to indemnify and defend the Named Insureds and seeking damages for breach

6    of contract and breach of the implied covenant of good faith and fair dealing. Evanston and the

7    Borjas each move for summary judgment on the threshold issue of whether the policy covered the

8    Borjas's injuries from the accident triggering Evanston's duties to indemnify and defend the

9    Named Insureds.

## LEGAL STANDARDS

11    Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

12    to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

13    56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a

14    verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

15    dispute is material if it "might affect the outcome of the suit under the governing law." *Id.* The

16    moving party bears the burden of demonstrating that there is no genuine factual dispute. *See*

17    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). While courts may not resolve genuine issues

18    of fact at the summary-judgment stage, courts may resolve any purely legal questions. *See N. Cal.*

19    *River Watch v. Wilcox*, 633 F.3d 766, 772 (9th Cir. 2011).

20    "It is well-settled in this circuit and others that the filing of cross-motions for summary

21    judgment … does not vitiate the court's responsibility to determine whether disputed issues of

22    material fact are present." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d

23    1132, 1136 (9th Cir. 2001) (quoting *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th

24    Cir. 1978)). Instead, "[w]here … the parties have both filed summary judgment motions," the

25    Court "considers each party's evidence to evaluate whether" a genuine factual dispute exists.

26    *Herrera v. Command Sec. Corp.*, 837 F.3d 979, 985 (9th Cir. 2016) (citation modified).

## DISCUSSION

28    Evanston and the Borjas have each moved for summary judgment as to Evanston's duty to

indemnify and to defend the Named Insureds in connection with the underlying action. The parties agree that the policy's baseline coverage for "'bodily injury' caused by an 'occurrence'" within the United States applies to the Borjas's injuries from the accident. Their dispute instead turns on whether either the auto exclusion or the Designated Premises or Project limitation bars coverage. Evanston argues that both exclusions apply, such that it has no duty to indemnify, and that the exclusions' applicability was obvious from the start of the underlying action, such that Evanston had no duty to defend. The Borjas contend that neither exclusion applies and that, even if one did, that fact was not sufficiently clear to absolve Evanston of its duty to defend the Named Insureds in the underlying action. As explained below, there is a genuine dispute of material fact as to whether the auto exclusion bars coverage. As to the other issues, however, there is no genuine dispute. The Designated Premises or Project limitation does not apply, and Evanston had a duty to defend.

**A. There is a genuine dispute of fact regarding James's status as an "employee."**

The auto exclusion provides that the policy "does not apply to … '[b]odily injury or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any … 'auto' … owned or operated by … any insured." The parties agree that the underlying action concerned "bodily injury" to Borja "arising out of" James's "use" of an "auto." So whether the auto exclusion precludes coverage for the underlying judgment turns on whether James was an "insured." The policy defines that term to include the Named Insureds' "'employees', but only for acts within the scope of their employment … or while performing duties related to the conduct of [the Named Insureds'] business." Evanston argues that James was an "employee" of the Named Insureds and was "act[ing] within the scope of [his] employment" at the time of the accident because he had been driving from a supply store to the property with materials for his plumbing work. The Borjas insist that James was merely a contractor, not an employee.

California law requires that terms in insurance policies "be understood in their ordinary and popular sense" unless otherwise defined. Cal. Civ. Code § 1644; *see also AIU Ins. Co. v. Super. Ct.*, 51 Cal.3d 807, 825 (1990). The policy states that "'employee' includes a 'leased worker'" (*i.e.*, "a person leased … by a labor leasing firm"), but not "a 'temporary worker'" (*i.e.*, "a person who is furnished … to substitute for a permanent 'employee' on leave or to meet

4

1  seasonal or short-term workload conditions"). No party argues that James was a leased or
2  temporary worker. Because the policy does not otherwise define "employee," the term's ordinary
3  meaning governs here.[1]

4  Both Evanston and the Borjas assert that, to determine the ordinary meaning of
5  "employee," the Court should look to a specific legal definition. Neither is correct.

6  Evanston points to California Labor Code § 2750.5, under which a person working without
7  a required license is "an employee." In the underlying action, the Borjas argued—and the referee
8  found—that James was a statutory employee under § 2750.5 because he performed plumbing
9  work at the property without a required contractor's license. Evanston contends that James must
10 therefore be an "employee" within the meaning of the policy and that the Borjas are judicially and
11 collaterally estopped from arguing otherwise. Yet nothing in the policy suggests that it
12 incorporates the Labor Code's definition of "employee," and Evanston cites no authority for the
13 proposition that California courts assess the meaning of terms in insurance policies solely by
14 reference to statutory definitions.

15 To be certain, courts may look to statutory definitions, among other sources, when they
16 find such definitions reflect a term's ordinary meaning and thus comport with insureds' reasonable
17 expectations. *See, e.g.*, *Ameron Int'l Corp. v. Ins. Co. of State of Penn.*, 50 Cal.4th 1370, 1386
18 (2010) *AIU Ins. Co. v. Superior Ct.*, 51 Cal.3d 807, 825-826 (1990); *Yoshida v. Liberty Myt. Ins.*
19 *Co.*, 240 F.3d 824, 827 (9th Cir. 1957). Here, however, Evanston has not explained how
20 § 2750.5—under which a worker's status as an "employee" turns on whether they have a required
21 license—tracks popular understandings of who qualifies as an "employee." The Court therefore

---

[1] The Borjas insist that the Court should construe the term "employer" narrowly based on the general rule in insurance-coverage disputes that "exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648 (2003) (citation modified). As Evanston argues, however, that rule does not apply here because the term "employer" appears in provisions of the policy that both limit *and* expand coverage. Nothing in the policy suggests that "employee" carries a different meaning in the coverage and exclusion clauses in which it appears, so the Court must define the term consistently throughout the policy. *See Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1116 (1999). Because the Court cannot interpret "employee" narrowly for purposes of the auto exclusion without limiting the scope of coverage under other provisions, the Court will not apply any presumption favoring a narrow construction of that term.

5

does not find the statutory definition dispositive of the term's meaning in the policy.

For this reason, the Borjas are not estopped from arguing that even if James was an employee under § 2750.5 he was not an "employee" within the meaning of policy. Because the statutory and contractual definitions may differ, the "issue at stake" in the underlying proceeding before the referee was not "identical" to the issue presented here, and collateral estoppel does not apply. *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019). Likewise, the Borjas's argument that James is not an "employee" for the purposes of the policy is not "clearly inconsistent" with their earlier position that he was a statutory employee, and judicial estoppel therefore does not apply. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

Rather than looking to the statutory definition of employee, the Borjas contend that the Court should determine the ordinary meaning of "employee" by reference to its definition at common law. That argument fares no better than Evanston's. As the Borjas note, "[w]hen ordinary people do not understand the meaning of a word, they do not turn to the [Labor] Code." *Scott v. Cont'l Ins. Co.*, 44 Cal.App.4th 24, 30 (1996). They likewise do not turn to the California Reports. Thus, as with the statutory definition of "employee," the common-law definition is not dispositive and may simply be one indicator of popular meaning.[2]

Rather than rely on any single legal definition, California courts ascertain the ordinary meaning of terms in insurance policies based on statutes, the common law, general dictionaries, and other sources. *See, e.g.*, *Scott v. Cont'l Ins. Co.*. 44 Cal. App. 4th 24, 29 (4th Dist. 1996); *AIU Ins. Co.*, 51 Cal. 3d 807, 825-26 (1990). Looking to dictionary definitions, the Ninth Circuit has held that, "[i]n the ordinary use of English, 'employee' means "one employed by another usually in a position below the executive level and usually for wages." *Brandes v. United States*, 783 F.2d 895, 897 (9th Cir. 1986) (quoting Webster's Third New International Dictionary 743 (1976)). And looking to the common law, other courts have concluded that employment "entail[s] some amount of 'control' of one's employees in the ordinary sense of that term." *In re Lithium Ion Batteries*

---

[2] To be certain, the judgment against the Named Insured in the underlying preceding was premised on an implicit finding that James was the Named Insured's agent for the purposes of liability at common law. But Evanston does not argue that the Borjas's are precluded from contending in these proceedings that James was not a common-law employee.

6

*Antitrust Litig.*, No. 13-MD-2420, 2014 WL 4955377, at *26 (N.D. Cal. Oct. 2, 2014); *see also Third Fed. Sav. & Loan Ass'n v. Fireman's Fund Ins. Co.*, 548 F.2d 166, 171 (6th Cir. 1977) (explaining that the employer's "right to control is the hallmark" that defines an "employee" as that term is ordinarily understood). Thus, for James to be an "employee" within the ordinary meaning of that term—and for purposes of the auto exclusion—the Named Insureds must have paid him in wages for work below the executive level and must have exercised control over his work.

        The evidence before the Court demonstrates a genuine dispute about whether James fell within the ordinary meaning of "employee." The parties agree that James worked for the Named Insureds "in a position below the executive level," as a plumber, and "for wages," which includes payment on a "piecework basis." *See Com. Ventures, Inc. v. Scottsdale Ins. Co.*, No. CV-15-08359, 2017 WL 1196462, at *6 (C.D. Cal. Mar. 22, 2017) (quoting Wage, Merriam–Webster Dictionary (Online ed. 2017), https://www.merriam-webster.com/dictionary/wages). But they point to contradictory evidence concerning the "amount of 'control'" that the Named Insureds exercised over James. *See In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *26. As Evanston notes, the referee in the underlying action determined that James "performed a variety of tasks related to" the property "[u]nder the supervision and direction of" Brown. And in their trial brief in the underlying action, the Borjas cited to text messages between Brown and James in which Brown directed both the specific work James was to perform and the dates on which he was to perform it. But the Borjas offer several pieces of evidence suggesting that the Named Insureds exercised only a minimal degree of control over James's work. For example, in his deposition in the underlying action, Brown stated that he "didn't tell [James] where to be" or "how many hours to use to work on stuff," and that James used his own tools. The record in the underlying action also shows that James was principally employed by another company, which presumably exercised primary control over his work. Additionally, James was hired only for short-term projects, similar to the "temporary worker" whom the policy expressly excluded from the definition of "employee."

        Both Evanston and the Borjas have identified evidence that, when viewed in the light most

favorable to them, creates a genuine dispute as to whether the Named Insureds exercised enough control over James to make him an "employee" as that term is ordinarily understood. As a result, there is a genuine dispute of material fact concerning the applicability of the auto exclusion, and the Court must deny the parties' cross-motions for summary judgment on that issue.

**B. The Designated Premises or Project limitation does not preclude coverage.**

The parties also seek summary judgment as to the application of the Designated Premises or Project limitation. There is no genuine question of material fact on this issue: The limitation does not bar coverage.

The limitation provides that the policy "applies only to 'bodily injury', 'property damage', 'personal and advertising injury' and medical expenses arising out of: [1] The ownership, maintenance or use of the Designated Premises; or [2] The Designated Project; shown in the Schedule of this endorsement or in the Declarations." The "Schedule" section of the endorsement is blank, and the text immediately below it instructs that, "[i]f no entry appears above, information required to complete this endorsement will be shown in the Declarations." Yet the Declarations do not define or even use the terms "Designated Premises" or "Designated Project." The only use of the terms "premises" or "project" in the Declarations is a section titled "All Premises You Own, Rent or Occupy," which lists the property.

As Evanston argues, when the limitation and Declarations are read together, the only reasonable conclusion is that the property constitutes the "Designated Premises." The limitation thus narrows the policy's coverage to bodily injury "arising out of" the "ownership, maintenance or use" of the property.

The Borjas's argument to the contrary is unavailing. They point to a section of the Declarations, titled "Business Description," which describes the Named Insureds' business as "buying and renovating homes." The Borjas contend that, although it does not use the word "project," this section could be read to describe the Designated Project. That would preserve coverage for injuries "arising out of" all of their home-buying or home-renovation activities, whether or not they were related to the property.

Were the Borjas's proposed reading of the limitation reasonable, the Court would be

8

required to adopt it. *See Wheeler v. Am. Fam. Home Ins. Co.*, 632 F. Supp. 3d 1063, 1071 (N.D. Cal. 2022) (explaining that courts must adopt whichever reasonable reading of an insurance policy favors the insured). But that is not the case here. To be sure, "buying and renovating homes" could fairly be characterized as a project. But the limitation "is phrased in the disjunctive," requiring the parties "to choose whether to elect project coverage or premises coverage." *Capitol Indem. Corp. v. Ashanti*, 28 F. Supp. 3d 877, 882 (D. Minn. 2014); *see also W. Heritage Ins. Co. v. Darrah*, No. 10–0476, 2010 WL 4780955, at *3–4 (M.D. Pa. Nov. 17, 2010). If "buying and renovating homes" is the Designated Project, then, the property cannot be the Designated Premises. No reasonable reader seeing a section in the Declarations listing the property as the Named Insureds' "premises" could conclude that the property is not the Designated Premises for purposes of the limitation. By contrast, a reasonable reader might read the "Business Description" without assuming that it constitutes the Designated Project.

Still, the limitation does not bar coverage. The limitation withdraws coverage only for injuries "arising out of … [t]he ownership, maintenance or use of the Designated Premises," not all those *occurring at* the premises. "California courts and [the Ninth Circuit] have consistently given a broad interpretation to the clause 'arising from' in an insurance contract." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 801 (9th Cir. 2017) (collecting cases). The phrase requires only "a minimal causal connection or incidental relationship." *Id.* (quoting *Crown Capital Sec., L.P. v. Endurance Am. Specialty Ins.*, 235 Cal.App.4th 1122, 1131 (2015); *see also State Farm Mutual Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 100–101 (1973) ("California cases have established beyond contention that this language of 'arising out of the use,' *when utilized in a coverage or insuring clause of an insurance policy,* has broad and comprehensive application, and affords coverage for injuries bearing almost any causal relation with the vehicle."). Thus, the limitation withdraws coverage here only if the accident lacked a minimal causal connection or incidental relationship to "the ownership, maintenance or use" of the property.[3]

---

[3] Evanston represents that two cases have construed similar limitations to bar coverage for all off-premises activities. In the first case, however, the policy limited coverage to injury arising only out of the "use" of the premises, not out of the "ownership, maintenance or use" of the premises. *See Atain Specialty Ins. Co. v. Dignity Hous. W., Inc.*, No. 19-CV-07296, 2020 WL

9

The accident had more than a minimal causal connection to the Named Insureds' "ownership" of the property. It is undisputed that the accident occurred because the Named Insureds, as owners of the property, hired James to perform plumbing work on the property. James caused the accident in the course of his performance while driving to the property from a store where he had purchased supplies for his work. The Named Insureds' "ownership" of the property, which led to James's hiring and the drive to the supply store that resulted in the accident, was thus a but-for cause of the accident.

Because the accident "ar[ose] out of" the Named Insured's "ownership" of the Designated Premises, the limitation does not bar coverage for injuries caused by the accident and the resulting judgment in the underlying action. The Court therefore grants summary judgment in favor of the Borjas on this issue.

**C. Evanston had a duty to defend.**

Finally, the Borjas move for summary judgment on Evanston's duty to defend the Named Insureds in the underlying action. Because Evanston has failed to raise a triable issue of fact regarding its duty to defend, summary judgment for the Borjas on that issue is also proper.

In California, "[t]he duty to defend is broader than the duty to indemnify, and extends to claims that are merely potentially covered." *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 901 (9th Cir. 2000) (citing *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal.4th 287, 299–300 (1993)). In other words, the insurer must defend unless "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Montrose Chem. Corp.*, 6 Cal.4th at 295. This duty "is determined by the information possessed by the insurer at the time it refuses to defend, not by information subsequently

---

7868127, at *4 (N.D. Cal. Dec. 29, 2020), *aff'd on other grounds*, No. 21-15127, 2021 WL 5755088 (9th Cir. Dec. 3, 2021). In the other case, the policy limited coverage to injuries arising out of "[t]he ownership, maintenance or use of the premises shown in the Schedule *and operations necessary or incidental to those premises.*" *Ill. Union Ins. Co. v. Midwood Lumber & Millwork, Inc.*, No. 13-CV-2466, 2014 WL 639420, at *3 (E.D.N.Y. Feb. 18, 2014) (emphasis added). The insureds claimed that their off-premises activities were covered as "operations necessary or incidental" to their business, but the court denied coverage because the activities were not "'necessary [or] incidental' to the premises themselves." *Id.* at *7. There was no discussion of whether the off-premises activities there "ar[ose] out of" the "ownership" of the premises.

10

1  obtained." *Amato v. Mercury Cas. Co.*, 18 Cal.App.4th 1784, 1787 (1993).

2        The record makes clear that, when Evanston refused to defend the Named Insureds, there
3  was at least a potential that the policy would cover the underlying action. As Evanston's letter
4  disclaiming coverage stated, the Named Insureds informed Evanston that they "had nothing to do
5  with" the accident, which was instead caused by a "subcontractor's employee" who "had no
6  regular hours and was driving their own truck." Evanston's internal records also stated that the
7  person driving the car during the accident was a "subcontractor employee." This information at
8  least raised the possibility that James was not an "employee" as that term is ordinarily understood,
9  and the attendant possibility that the auto exclusion did not preclude coverage. The Named
10 Insureds also told Evanston that, while the accident "occurred off premises from the project,"
11 James had been "driving … on company business." Evanston knew, based on the policy, that the
12 company's business was "buying and renovating homes," including the property. So the evidence
13 that the accident occurred while James was "on company business" raised the prospect that the
14 accident arose out of the Named Insureds' ownership of the property, bringing it within the
15 Designated Premises or Project limitation. The resulting potential for coverage, even if small, was
16 sufficient to trigger Evanston's duty to defend. *Pershing Park*, 219 F.3d at 901.

17       Evanston offers three unavailing arguments in response. First, it insists that the Named
18 Insureds had no reasonable expectation of coverage for the accident because they did not purchase
19 automobile coverage and instead purchased a general-liability policy. But "the labels used to
20 define policy terms are not controlling; the terms themselves are." *Vons Cos., Inc. v. United States*
21 *Fire Ins. Co.*, 78 Cal. App. 4th 52, 62 (2000); *Monster Energy Co. v. Schechter*, 7 Cal. 5th 781,
22 794, 444 P.3d 97, 106 (2019) (citing *Vons* approvingly). Though not labelled as automobile
23 insurance, the policy here permits coverage for liability resulting from non-employees' operation
24 of motor vehicles in connection with the Named Insured's ownership of the property. On the facts
25 available at the time it refused to defend, Evanston should have recognized that possibility.

26       Second, Evanston argues that the complaint in the underlying action left no possibility of
27 coverage because it alleged that the accident arose from the operation of an automobile by the
28 Named Insureds themselves, rather than by a contractor, and did not occur at the property. But

"[t]he determination of whether the duty to defend exists is not limited to consideration of the complaint and the terms of the policy." *Anderson*, 339 F. Supp. 3d at 937. "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). Here, the Named Insureds told Evanston that they had not been operating the automobile involved in the accident, and that it was instead operated by a contractor.

Finally, Evanston argues that many of the extrinsic facts available to it at the time it refused to defend reasonably led it to believe that the accident arose from an employee's operation of the car, such that the auto exclusion barred coverage. As discussed above, however, Evanston also had evidence that the driver was merely a contractor, which created the potential for coverage. No more is necessary to trigger the duty to defend. *See Pershing Park*, 219 F.3d at 901; *Montrose Chem. Corp.*, 6 Cal.4th at 300.

Because the information available to Evanston when it refused to defend showed at least a possibility of coverage, and because there is no dispute that Evanston declined to defend the Named Insureds, the Court grants the Borjas's motion for summary judgment that Evanston had and breached its duty to defend.

## CONCLUSION

For the foregoing reasons, there is a genuine issue of material fact as to the applicability of the auto exclusion. The parties' cross-motions for summary judgment as to that issue are DENIED. No genuine questions exist concerning the applicability of the Designated Premises or Project limitation or Evanston's duty to defend the Named Insureds in the underlying action. As to those issues, Evanston's motion for summary judgment is DENIED and the Borjas's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: October 7, 2025

P. Casey Pitts
United States District Judge